**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: | **Joint Administration Pending** |
| Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic; | Case No.: 26-30886 |
| The Medical Group, LLC; | Case No.: 26-30888 |
| North Dakota Dialysis, LLC; | Case No.: 26-30889 |
| Aurora Dialysis, LLC; | Case No.: 26-30890 |
| Kidney Institute of North Dakota, LLC; | Case No.: 26-30891 |
| KDJ Investment Group, LLC; | Case No.: 26-30892 |
| KDJ Properties, LLC, | Case No.: 26-30893 |
| Debtors.[1] | Chapter 11 Cases |

# MOTION FOR ORDER AUTHORIZING DEBTORS TO PAY ACCRUED AND OUTSTANDING PREPETITION EMPLOYEE COMPENSATION, BENEFITS, AND RELATED AMOUNTS

1. The Debtors Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic ("Grand Forks Clinic"), The Medical Group, LLC ("Medical Group"), North Dakota Dialysis, LLC ("ND Dialysis"), Aurora Dialysis, LLC ("Aurora Dialysis"), Kidney Institute of North Dakota, LLC ("Kidney Institute"), KDJ Investment Group, LLC ("KDJ Investment"), and KDJ Properties, LLC ("KDJ Properties," and, together with Grand Forks Clinic, Medical Group, ND Dialysis, Aurora Dialysis, Kidney Institute, and KDJ Investment, the "Debtors") hereby file this

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' addresses and Employer Identification Numbers (EINs) are as follows: Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic (EIN #0821); The Medical Group, LLC (EIN #3765); North Dakota Dialysis, LLC (EIN #3768); Kidney Institute of North Dakota, LLC (EIN #6471); and KDJ Investment Group, LLC (EIN #2199), each located at 5750 S Washington Street, Grand Forks, ND 58201. Aurora Dialysis, LLC (EIN #8084) is located at 1451 44th Avenue South, Suite 104D, Grand Forks, ND 58201, and KDJ Properties, LLC (EIN #1920) is located at 645 Beacon Circle, Grand Forks, ND 58201.

Motion for Order Authorizing Debtors to Pay Accrued and Outstanding Prepetition Employee Compensation, Benefits, and Related Amounts (the "Motion"). This Motion should be granted because the Debtors have compelling business justifications for paying these obligations. The Debtors will lose the goodwill of their workforce and may lose their workforce altogether if these payments are not made. If the members of their workforce are lost, the Debtors' ability to operate their businesses will be jeopardized, and they will be unable to fund their reorganization plans. Thus, the payment of these employee-related amounts is important to ongoing operations and the Debtors' ability to raise capital to pay creditors.

2. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 5005. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The petitions commencing these Chapter 11 cases were filed on October 16, 2026 (the "Petition Date"). The cases are currently pending before this Court.

4. This Motion arises under 11 U.S.C. §§ 105(a), 362, 363, 549, 1107, and 1108. This Motion is filed under Fed. R. Bankr. P. 9013 and 9014 and Local Rules 9013-1 and 9014-1. Notice of the Motion is provided pursuant to the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

5. The Debtors have filed a contemporaneous motion requesting expedited relief pursuant to Fed. R. Bankr. P. 9006(c) and Local Rule 9006-1.

## BACKGROUND

6. On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. There is presently no pending request or motion for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been appointed.

7. Further background information about the Debtors and facts related to other first-day motions are set forth in the Declaration of Dr. Khaled Rabadi in Support of Chapter 11 Petition and First Day Motions.

8. The Debtors currently employ a total of 44 individuals. Grand Forks Clinic's employees are based out of the Debtors' headquarters in Grand Forks, North Dakota. Aurora Dialysis's employees are based out of leased space within the Altru Health System building located at 1451 44th Avenue South, Grand Forks, North Dakota.

9. As to each and every one of their employees (collectively, the "Workforce"), the Debtors seek authorization to pay: (a) accrued prepetition salary and wages, including payroll taxes, and employee benefits; (b) reimbursable expenses incurred prepetition; and (c) employee funds to the correct recipients.

**I. SALARY AND WAGES.**

10. Of the 44 employees, nine are salaried and full time; and 35 are hourly and full time. The Debtors seek authorization to pay accrued, but unpaid, prepetition amounts owed with respect to these forms of compensation (the "Compensation Obligations"). The Debtors estimate that the Compensation Obligations currently amount to $50,000.

**A. Description of Employee Compensation.**

11. The Debtors' current employees are paid bi-weekly. Payments are made in arrears by one week. They were last paid on October 16, 2026, for amounts earned from September 28, 2026, through October 11, 2026. The next payroll on October 30, 2026, will include four prepetition days (October 12, 2026, through October 15, 2026) of unpaid amounts.

12. The Debtors estimate unpaid prepetition payroll to be approximately $50,000.

13. The salaried employees are paid on the same schedule as all employees, and their salaries are included in the $50,000 estimate for prepetition payroll.

14. Like other employees, as of the Petition Date, the salaried employees have accrued four days of unpaid prepetition salary.

15. The amount owed to each salaried employee for unpaid prepetition salary does not exceed the $17,150 priority cap under 11 U.S.C. § 507(a)(4).

16. The medical providers employed by the Debtors are entitled to a potential production bonus. The Debtors owe two employees, Kelly Carlson and Vanessa Kes, production bonuses as of the Petition Date in the amounts of $57,805 and $24,000, respectively (the "Production Bonuses"). The Production Bonuses exceed the $17,150 priority cap under 11 U.S.C. § 507(a)(4).

**B. Payroll Process.**

17. The Debtors process payroll on a bi-weekly basis via QuickBooks, including the withholding of taxes, elected benefits, and garnishments, if any. The Debtors also make payment of all tax amounts to the respective authorities via the EFTPS system, and they retain a commercial service provider for filing necessary tax returns.

18. Net pay is generally directly deposited. Pay stubs detailing earnings and withholdings are given to each employee through their employee mailbox and/or via e-mail.

19. The Debtors use QuickBooks' payroll system. All funds (including net pay, taxes, benefits, etc.) are withdrawn from the Debtors' account the day before the payroll date. If there is a holiday, the Debtors typically make payroll on the next business day.

20. The next payroll date is October 30, 2026, and, if this Motion is not granted, the payment of the Debtors' employees will be even further delayed.

## II. EMPLOYEE BENEFITS.

### A. Benefits Offered.

21. The Debtors offer their employees the following benefits (collectively, the "Employee Benefits"), described in additional detail below, with the following estimated monthly cost to the Debtors:

| Employee Benefit | Average Monthly Cost |
|---|---|
| Health Insurance | $23,000 |
| Dental Insurance | $2,000 |
| Vision Insurance | $500 |
| Life Insurance | $350 |
| 401(k) Plan | $5,200 |
| **TOTAL** | **$31,050** |

22. The above average monthly costs were calculated based on historical monthly payments. The average monthly benefit costs identified above accurately reflect the cost of benefits prepetition, but these amounts will likely be less during the opening months of these bankruptcy cases.

**B. Health Insurance.**

23. All full-time employees are eligible to participate in the Debtors' medical plan. The Debtors pay 60% of the full premium. Any remaining premium is deducted from the employees' paychecks pre-tax.

24. The monthly cost to the Debtors currently averages $23,000 per month, which is generally paid toward the beginning of each month.

25. Blue Cross Blue Shield of North Dakota is the current provider of the medical plan. There is a separate $70.00 administrative fee for health insurance administration that gets paid to Wex Health.

**C. Dental Insurance.**

26. All full-time employees are also eligible to participate in the Debtors' dental plan. The Debtors pay 25% of the premium for employees (including their dependents, if any).

27. Blue Cross Blue Shield of North Dakota is the current provider of the dental plan. There is not a separate administrative fee for the dental insurance administration.

28. The monthly cost to the Debtors currently averages $2,000 per month, which is generally paid toward the beginning of the month.

**D. Vision Insurance.**

29. All full-time employees are also eligible to participate in the Debtors' vision plan. The Debtors pay 25% of the premium for employees (including their dependents, if any).

30. Blue Cross Blue Shield of North Dakota is the current provider of the vision plan. There is not a separate administrative fee for the vision insurance administration.

31. The monthly cost to the Debtors currently averages $500 per month, which is generally paid toward the beginning of the month.

**E. Life Insurance.**

32. All full-time employees are also covered by the Debtors' life insurance plan. It costs the Debtors approximately $350 per month.

33. Mutual of Omaha administers the life insurance plan. There is not a separate administrative fee for the life insurance plan.

**F. 401(k) Plan.**

34. Employees are eligible to participate in the Debtors' 401(k) plan. The Debtors are the plan sponsor, and there are minimal administrative fees through the administrator of the plan, Employee Fiduciary, where the 401(k) deposits are made.

35. The Debtors contribute an amount equal to 3% of each participating employee's wages into the 401(k) plan as a safe harbor contribution.

36. Currently, 24 employees participate in the Debtors' 401(k) plan.

37. The monthly cost to the Debtors amounts to approximately $5,200.

## III. PAID TIME OFF.

38. The Debtors have policies concerning the accrual and handling of payment for vacation, sick time, and personal days (collectively, "PTO"). PTO varies by job classification. Employees paid hourly accrue PTO at a rate of 10% of hours worked. Salaried administrative employees earn eight hours of PTO per pay period. Providers' PTO depends on their contracts, but it ranges from 3-5 weeks per year.

39. Hourly employees who quit or are terminated are entitled to payment of any accrued, earned, or unused PTO.

40. The Debtors do not seek to pay the PTO balances to their employees. Rather, the Debtors seek to continue their ordinary course PTO policies and honor PTO that was accrued or

otherwise earned prepetition.

## IV. EXPENSE REIMBURSEMENT.

41. The Debtors also seek authorization to continue their employee expense reimbursement policy and to pay any prepetition amounts owed under the policy.

42. The Debtors customarily reimburse their employees for a variety of business expenses in the ordinary course of performing their duties on behalf of the Debtors. These reimbursable expenses include those incurred in connection with travel. Because employees do not always submit claims for reimbursement promptly, it is difficult for the Debtors to determine the exact amount outstanding at any time, but employees incur, on average, approximately $1,000 monthly in reimbursable business expenses. The Debtors estimate that, as of the Petition Date, their prepetition obligations for reimbursements to employees collectively (the "Reimbursement Obligations") should not exceed $350.

## V. EMPLOYEE FUNDS.

43. In the ordinary course, the Debtors withhold from employee paychecks for employee portions of benefit costs as well as for non-voluntary withholdings, including: child support; garnishments; federal tax levies; state tax levies; wage agreements; insurance premium contributions; and amounts due to employees' bankruptcy trustees (the "Employee Funds"). These funds are the property of the Debtors' employees, and the Debtors request authorization to pay over to the appropriate recipients the Employee Funds that the Debtors deducted prepetition or will deduct on account of prepetition obligations to employees paid pursuant to an order granting the relief requested in this Motion.

## RELIEF REQUESTED

44. The Debtors request authority to continue paying their Compensation Obligations, Employee Benefits, Reimbursement Obligations, and Employee Funds (collectively, the "Prepetition Employee Obligations") with respect to their Workforce.

45. The Debtors also request authority to pay the Production Bonuses up to the $17,150 cap provided by Section 507(a)(4).

46. The Debtors also request authority to continue their ordinary course PTO policies and honor PTO that was accrued or otherwise earned prepetition.

## BASIS FOR RELIEF REQUESTED

47. Nowhere in the Bankruptcy Code is a debtor expressly prohibited from making a postpetition payment of a prepetition claim, which the Debtors propose to do here. However, two provisions found in the Bankruptcy Code suggest that obtaining court approval is required or, at least, prudent. Section 363(b) of the Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business. 11 U.S.C. § 363(b). Section 549 of the Bankruptcy Code allows a debtor to avoid the postpetition transfer of property that is not authorized by the Bankruptcy Code or by the court. *Id.* § 549. Thus, the Bankruptcy Code, including these provisions, establishes this Court's authority to approve a postpetition payment of a prepetition claim.

48. Section 363 of the Bankruptcy Code allows a debtor to pay claims not in the ordinary course of business as long as the court authorizes it. It is in the ordinary course of business for a company to pay wages, salaries, and employee benefits. Nevertheless, several courts have suggested that satisfaction of such an obligation that accrued prepetition is not in the ordinary course of business and, therefore, requires court approval. *See In re K-Mart Corp.*, 359 F.3d 866,

872 (7th Cir. 2004); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Debtors frequently request court authorization to pay wages, salaries, and employee benefits that accrued prepetition.

49. Paying employee claims that accrued prepetition, like any other use of property outside the ordinary course of business, is appropriate if a debtor demonstrates a "business justification" for making such payments. As stated by the court in the *Ionosphere Clubs* case:

> Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under section 363(b).

*In re Ionosphere Clubs, Inc.*, 98 B.R. at 175; *see also Michigan Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (noting that the court allowed the debtor to continue payment of prepetition wages, salary, and other benefits with an aggregate value exceeding $250,000,000 because it was consistent with the debtor's "imperatives"). Payment of prepetition claims is appropriate when payment will help to "stabilize [the] debtor's business relationships without significantly hurting any party." Russell A. Eisenberg and Frances F. Gecker, *The Doctrine of Necessity and Its Parameters*, 73 Marq. L. Rev. 1 (1989); *see also In re UNR Indus., Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992). Thus, where a debtor can establish the above factors, the court should approve the postpetition payment of prepetition accrued employee benefits.

50. The Doctrine of Necessity recognizes that, in certain circumstances, it is in the best interests of all concerned to pay certain prepetition creditors out of turn as an inducement to them to continue working for, or doing business with, the debtor. *See Miltenberger v. Logansport*, 106 U.S. 286 (1882). As the above citation indicates, this doctrine predates the Bankruptcy Code by many years. Nonetheless, the idea that it is in the best interests of all concerned to pay necessary

claims to keep the debtor in business and its employees in wage-paying jobs has survived and has been recognized under the Bankruptcy Code. *See, e.g., In re Payless Cashways, Inc.*, 268 B.R. 543 (Bankr. W.D. Mo. 2001); *In re Equal Net Commc'ns Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000); *In re Just For Feet, Inc.*, 242 B.R. 821 (D. Del. 1999); *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174.

51. In applying the Doctrine of Necessity, other courts have relied on 11 U.S.C. §§ 105 and 549. Section 105(a) grants the court the authority to issue any order "necessary or appropriate to carry out the provisions" of the Bankruptcy Code and also provides a basis for authorizing a debtor to pay accrued prepetition wages, salary, and benefits. *Id.* § 105(a); *see In re Ionosphere Clubs, Inc.*, 98 B.R. at 175; *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991). Furthermore, 11 U.S.C. § 549(a)(2)(B) recognizes that a court at times may authorize postpetition payment of prepetition debts. *Id.*; *In re Payless Cashways, Inc.*, 268 B.R. at 546; *Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.)*, 37 B.R. 334, 336 n.3 (Bankr. W.D. Mo. 1984); Eisenberg & Gecker, *supra*.

52. Thus, the Bankruptcy Code furnishes several bases for postpetition payment of prepetition claims in the right circumstances. This is true notwithstanding the decision in the case of *In re K-Mart Corp.*, 359 F.3d 866 (7th Cir. 2004). In *K-Mart*, the court questioned whether the bankruptcy court had authority to approve payments to "critical vendors." In that case, the appellate court ruled that the court had not established its authority to do so. In so ruling, however, the court also recognized that 11 U.S.C. § 363(b) might provide a basis for authorizing such payments in the right circumstance. *In re K-Mart Corp.*, 359 F.3d at 872. The court suggested that, to justify a request for authority to pay prepetition claims, the debtor should demonstrate that it

will suffer damage if the payment is not made,[2] and that other creditors will be as well off with the payment as without. *Id.* If a debtor can make such a showing, it appears that even the Seventh Circuit would overcome its skepticism and allow postpetition payment of a prepetition claim.

53. Moreover, as recognized in *In re Tusa-Expo Holdings, Inc.*, No. 08-45057, 2008 WL 4857954 (Bankr. N.D. Tex. Nov. 7, 2008), employees are not similarly situated to other unsecured creditors, such as "critical vendors." Congress has given a preferred status to employee claims in 11 U.S.C. §§ 507(a)(4) and (5), and payment of these claims in advance of dealing with claims of lesser status does not disadvantage unsecured creditors. *Id.* at *2. Even though the wage motion in *Tusa-Expo* was not opposed, the court deemed it important "that a prospective chapter 11 debtor be confident that, absent a question as to whether continuation of its operations is appropriate, prepetition wage and benefit obligations will continue during chapter 11 to be honored on a timely basis" and held that "it would be an abuse of discretion not to grant the payment of the priority prepetition wages within the statutory limit . . . ." *Id.* at *1.

54. In applying the provisions of the Bankruptcy Code and the Doctrine of Necessity discussed above, the Court should be guided by practicality and common sense. *In re Payless Cashways*, 268 B.R. at 546. This is particularly important when the Court considers payments to employees. Courts have long recognized the importance of maintaining the goodwill of employees. In *LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.)*, the court stated:

> Additionally, employee good will and contentment is an asset which is vital to the continuation of a debtor's operation and its ability to effectively reorganize during the Chapter 11 process.

[2] The *K-Mart* case dealt with payment to critical vendors, and the court suggested that the debtor would need to make a showing that vendors not paid for prepetition deliveries will refuse to make postpetition deliveries. In the employee situation, an analogous damage would be the risk of employees terminating their employment or harboring ill will toward the debtor, which adversely affects performance. Such factors are present here.

116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990). As the court noted in *Tusa-Expo*:

> Clearly a debtor's employees are among those creditors with whom the debtor must deal. Absent competent personnel, it is doubtful that any debtor would be able to operate its business as contemplated by Code section 1108. . . [A]s a practical matter, no debtor can afford to lose very many of its employees, especially in a chapter 11 case's early days. Second, continuity of conduct of business is important in a newly filed Chapter 11 case. Employees familiar with the debtor's operations will be essential to [all of the early case responsibilities] . . . Third, even if employees remain with a debtor notwithstanding non-payment of prepetition wages and benefits, it is probable that their work would be [adversely] affected by their loss of income.

2008 WL 4857954, *2-3.

55. Here, the members of the Debtors' Workforce are vital to their ability to continue to operate their businesses and to generate revenue. The Debtors filed these Chapter 11 cases with the intent of reorganizing their businesses and proposing a joint plan of reorganization that will provide for payments to creditors. Continued operation of the Debtors' businesses is essential to allow the Debtors to generate maximum return for all creditors by funding the plan of reorganization.

56. The members of the Debtors' Workforce are necessary for the continued operation of their businesses. Operation of the business requires specialized and technical knowledge and expertise. The members of the Workforce have this specialized and technical knowledge and expertise. However, if any of the current members of the Workforce were to leave the Debtors, the Debtors believe it would take substantial time and resources to both locate a suitable replacement, due to the filing of these Chapter 11 cases and overall changes in the labor market in the industry, and train the replacement regarding the Debtors' unique systems and processes. The Debtors believe failing to pay the members of their Workforce for prepetition services will make it unlikely that they would continue working for the Debtors.

57. The continued operation of the Debtors' businesses manifestly depends on the retention of the services of the members of the Workforce. Consequently, it is critical that the Debtors continue their ordinary course personnel policies, programs, and procedures that were in effect prior to the Petition Date. If the checks issued and fund transfers requested in payment of the Prepetition Employee Obligations are dishonored or if such accrued obligations are not timely paid postpetition, the members of the Debtors' Workforce will suffer not only a loss of morale, but also personal hardship and may be unable to pay their daily living expenses. Likewise, it would be inequitable to require the Debtors' Workforce to bear personally the business expenses that are incurred on behalf of the Debtors with the expectation that they would be reimbursed.

58. Payment of all Prepetition Employee Obligations in accordance with the Debtors' prepetition business practices is in the best interests of the Debtors, their creditors, and all parties in interest, as it will enable the Debtors to continue to operate their businesses in an economic and efficient manner with minimal disruption. If payment of the Prepetition Employee Obligations is postponed to the closure of the cases, the Debtors' continued operation of their businesses will be threatened by Workforce losses and ill will. To the extent their business operations suffer, creditors also suffer. Thus, it is in the best interests of creditors that the Prepetition Employee Obligations be paid to maintain the goodwill of the Workforce. The issue is really one of timing of payment, and creditors will benefit, rather than be harmed, by the payments for which the Debtors seek authorization.

59. The Debtors have calculated the priority amount as to each member of their Workforce under 11 U.S.C. § 507(a)(4) and as to the employee group under 11 U.S.C. § 507(a)(5). The Debtors believe that the amounts paid for the Compensation Obligations will not exceed the

$17,150 priority amount under 11 U.S.C. § 507 as to any individual employee, except for the Production Bonuses.

60. Consequently, the Debtors request authorization to pay their prepetition Compensation Obligations based on the above estimated amounts, including authorization to honor outstanding wage and salary obligations. The Debtors will pay only Compensation Obligations accrued in the time immediately prior to the Petition Date. All payments on account of the Compensation Obligations and the Production Bonuses will be subject to the $17,150 priority limitation of 11 U.S.C. § 507(a)(4) as to each employee. The Debtors seek authority to pay the Compensation Obligations and the Production Bonuses (up to the $17,150 priority limitation) to convince the members of their Workforce to remain with the Debtors.

61. The Debtors request authorization to continue to make the above-described benefit payments as they come due, as they did prepetition, including authorization to honor outstanding benefit obligations, so the employee benefits will continue without interruption. The Debtors believe that all payments on account of benefits allocable to the prepetition period, when combined with the Compensation Obligations, will not exceed the priority dollar limits established by 11 U.S.C. §§ 507(a)(4) and (5) as to each employee. However, due to the unpredictable nature of health benefit claims and the privacy protections of the Health Insurance Portability and Accountability Act, an employee may be entitled to a dollar amount that exceeds $17,150. The Debtors still seek authority to pay all benefit payments.

62. The Debtors request authorization to continue paying the Reimbursement Obligations generally.

63. The Debtors submit that all employee-requested payroll deductions, including the Employee Funds, are made from amounts earned by, and otherwise payable to, their employees.

Accordingly, continuation of such deductions will not diminish the estate or otherwise prejudice creditors.

64. The Debtors further submit that, because payroll taxes constitute "trust fund" taxes, the payment of such taxes will not prejudice unsecured creditors of the Debtors, given that: (a) the funds are likely not property of the estate available to pay creditors' claims; and (b) to the extent such funds are property of the estate, the relevant taxing authorities would hold priority claims under 11 U.S.C. § 507(a)(8) in connection with such obligations.

65. With respect to the accrued and unpaid Prepetition Employee Obligations, the Debtors request that, to the extent practicable, the banks that maintained the prepetition accounts on which checks were drawn, or from which funds were requested to be transferred, make such payments, and be authorized to honor such checks or fund transfer requests, regardless of whether they were issued prior to or after the Petition Date. The Debtors have, or will have, on deposit sufficient funds in such accounts to satisfy all the Prepetition Employee Obligations so that the banks will not be prejudiced by any order authorizing them to honor checks or fund transfer requests with respect to such amounts.

66. Finally, the Debtors request that authorization of the payment of the Prepetition Employee Obligations not be deemed to constitute postpetition assumption or adoption of any contract, policy, plan, program, or employment agreement pursuant to 11 U.S.C. § 365. The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code.

## CONCLUSION

67. For the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested in the Motion.

68. This Motion is accompanied by a proposed order and proof of service.

69. Pursuant to Fed. R. Bankr. P. 9006(d), this Motion is supported by the verification of facts in the Affidavit of Dr. Khaled Rabadi attached hereto.

70. Pursuant to Local Rule 9014-1(B), the Debtors hereby give notice that they may, if necessary, call Dr. Khaled Rabadi, the owner of the Debtors, whose business address is 5750 S Washington Street, Grand Forks, ND 58201, to testify regarding the facts set forth in the Motion.

71. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order:

A. Authorizing the Debtors to pay accrued prepetition wages, salary, bonuses, payroll taxes, and employee benefits;

B. Authorizing the Debtors to pay the Production Bonuses up to the $17,150 priority limitation in Section 507(a)(4);

C. Authorizing the Debtors to continue to make their ordinary course benefit payments and continue with their ordinary course benefit policies;

D. Authorizing the Debtors to continue their ordinary course PTO policies and to honor PTO that was accrued or otherwise earned prepetition;

E. Authorizing the Debtors to reimburse employees for reimbursable expenses incurred prepetition;

F. Authorizing the Debtors to transfer employee funds to the correct recipients;

G. Authorizing the Debtors' banks to honor orders for such payment; and

H. Granting such other relief as the Court deems just and equitable.

Dated: October 19, 2026

*/e/ Steven R. Kinsella*
Steven R. Kinsella (#09514)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000
skinsella@fredlaw.com

Austin A. Eggl (#09672)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND 58102-4991
(701) 237-8200
aeggl@fredlaw.com

**PROPOSED ATTORNEYS FOR DEBTORS**

**AFFIDAVIT**

I, Dr. Khaled Rabadi, am the owner of Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic, The Medical Group, LLC, North Dakota Dialysis, LLC, Aurora Dialysis, LLC, Kidney Institute of North Dakota, LLC, KDJ Investment Group, LLC, and KDJ Properties, LLC, and I declare under penalty of perjury that the facts set forth in the preceding Motion for Order Authorizing Debtors to Pay Accrued and Outstanding Prepetition Employee Compensation, Benefits, and Related Amounts are true and correct, according to the best of my knowledge, information, and belief.

Dated: October 19, 2026.

Signed: DocuSigned by: Khaled Rabadi
56D59FC25E1A448...
Dr. Khaled Rabadi

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

---

In re:

Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic;
The Medical Group, LLC;
North Dakota Dialysis, LLC;
Aurora Dialysis, LLC;
Kidney Institute of North Dakota, LLC;
KDJ Investment Group, LLC;
KDJ Properties, LLC,

Debtors.

Case No.: 26-30886
Case No.: 26-30888
Case No.: 26-30889
Case No.: 26-30890
Case No.: 26-30891
Case No.: 26-30892
Case No.: 26-30893

Chapter 11 Cases

---

INTERIM ORDER AUTHORIZING THE DEBTORS TO PAY ACCRUED AND OUTSTANDING PREPETITION EMPLOYEE COMPENSATION, BENEFITS, AND RELATED AMOUNTS

---

Debtors Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic ("Grand Forks Clinic"), The Medical Group, LLC ("Medical Group"), North Dakota Dialysis, LLC ("ND Dialysis"), Aurora Dialysis, LLC ("Aurora Dialysis"), Kidney Institute of North Dakota, LLC ("Kidney Institute"), KDJ Investment Group, LLC ("KDJ Investment"), and KDJ Properties, LLC ("KDJ Properties," and, together with Grand Forks Clinic, Medical Group, ND Dialysis, Aurora Dialysis, Kidney Institute, and KDJ Investment, the "Debtors") filed a Motion for Order Authorizing Debtors to Pay Accrued and Outstanding Prepetition Employee Compensation, Benefits, and Related Amounts (the "Motion").

The Debtors served notice of the Motion. The Court held a preliminary hearing on the Motion on October 23, 2026. Based upon the Motion and for the reasons stated on the record at the October 23, 2026, hearing, the Court finds cause for granting Debtors the relief they seek on

an interim basis. Specifically, the Court finds that paying accrued but unpaid prepetition wages, along with production bonuses owed to two key employees, up to the $17,150 priority limitation provided by 11 U.S.C. § 507(a)(4), is necessary to protect and preserve the estates, critical to the operation of the Debtors' businesses, and in the best interests of the Debtors' estates, their creditors, and other parties in interest. It also finds that payment of the prepetition wages listed in the Motion is necessary to avoid immediate and irreparable harm.

**IT IS ORDERED:**

1. The Motion is granted on an interim basis.

2. Debtors are authorized to pay their employees for prepetition payroll obligations outlined in the Motion.

3. Debtors are authorized to pay prepetition bonus amounts owed to employees up to the $17,150 priority limitation provided by 11 U.S.C. § 507(a)(4).

4. Debtors are authorized to continue making the benefit payments and offering their benefit policies described in the Motion on an interim basis.

5. Debtors are authorized to continue their ordinary course paid time off policies during the interim period and honor paid time off that was accrued or otherwise earned prepetition.

6. Debtors are authorized to reimburse their employees for expenses incurred prepetition and during the interim period pursuant to their prepetition practices and policies.

7. Debtors are authorized to pay to the appropriate recipients any sums the Debtors deducted prepetition or will deduct from the payments paid pursuant to this Order.

8. Debtors are not authorized to make any payments in excess of the priority amounts identified in 11 U.S.C. §§ 507(a)(4) and (5).

9. The financial institutions at which Debtors maintain payroll and operating accounts are authorized to honor all instruments presented in payment of any obligations approved by this Order.

10. A final hearing on the Motion will be held on _______, 2026, at ____ in Courtroom # 3, Second Floor, Quentin N. Burdick United States Courthouse, 655 First Avenue North, Fargo, North Dakota. The deadline to file an objection to final relief is ________, 2026. If the Court receives no objections to the Motion or if the objections are withdrawn, the Court may enter an order granting the relief requested and cancel the hearing.

Dated:

SHON HASTINGS, JUDGE
UNITED STATES BANKRUPTCY COURT